IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TRUSTEES OF THE NATIONAL     *
AUTOMATIC SPRINKLER INDUSTRY   *
WELFARE FUND, et al.,                 *
                                                    *
               Plaintiffs,                *
                                                    *
              v.                                *       Civil Action No. TDC-18-0761
                                                    *
MARION FIRE SPRINKLER            *
 & ALARM, INC.,                       *
                                                    *
               Defendant.               *
                                                    *
                                                    *
                                                   ******

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses the "Motion for Entry of Default Judgment" filed by Trustees of the following: (a) the National Automatic Sprinkler Industry Welfare Fund; (b) the National Automatic Sprinkler Industry Pension Fund; (c) the Sprinkler Industry Supplemental Pension Fund; and (d) the International Training Fund (collectively, "Plaintiffs"). (ECF No. 8).[1] Plaintiffs brought this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1132 and 1145, ("ERISA") to recover delinquent contributions and related relief from Marion Fire Sprinkler & Alarm, Inc. ("Defendant").

Pursuant to 28 U.S.C. § 636, and Local Rule 301, the Honorable Theodore D. Chuang referred this matter to me to author a report and to make recommendations. I do not believe that

---

[1] Each of the Plaintiffs were established pursuant to Restated Trust Agreements between the National Fire Sprinkler Association and the Sprinkler Fitters Unions No. 669 and 709. (ECF No. 8-6, Exhs. D-G). Each fund is defined as employee benefit plan pursuant to 29 U.S.C. § 1002(1). In addition, each fund is maintained as a "multiemployer plan." 29 U.S.C. § 1002(37)(A).

a hearing is necessary. L.R. 105.6. As set forth more fully below, I ultimately recommend that Plaintiffs' motion for default judgment be GRANTED, and that damages be awarded as set forth herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background: The Collective Bargaining Agreement and the Collective Funds

Plaintiffs, the Trustees, are authorized collection fiduciaries and agents for the four funds (the "Collective Funds"). The facts, as set forth by Plaintiffs, are that on February 11, 2014,[2] the Defendant entered into a Collective Bargaining Agreement ("Agreement") with the Sprinkler Fitters and Apprentices Local Union No. 268, St. Louis, Missouri, of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada ("Local Union No. 268"). Pursuant to that Agreement, all the Defendant's current and future employees would become members of Local Union No. 268 as a condition of their employment. (ECF No. 8-5). The Agreement was signed by the Defendant's President, Andrew J. Allen, and by Michael R. Mahler, Business Manager, on behalf of Local Union No. 268. (ECF No. 8-4).

According to the "Guidelines for Participation in the Sprinkler Industry Trust Funds" (the "Guidelines"), the Defendant was required to submit to the Trustees of the Collective Funds monthly reports of the hours worked by all covered employees. (ECF No. 8-10). It is from those reports that the Trustees determine the amount of contributions owed by the Defendant. (ECF No. 8-3). The Agreement contains several articles requiring the Defendant's participation in and

---

[2] Although the Collective Bargaining Agreement ("Agreement") was executed by the parties on February 11, 2014, the Agreement stipulated that it was made on August 31, 2013, and the terms contained therein became effective on September 1, 2013, and were to remain in effect until August 31, 2018. (ECF No. 8-5).

contribution to the Collective Funds. (ECF No. 8-5). The Agreement's articles that are germane to this case are set forth immediately below.

The first of the Agreement's financial obligations concerns the health and welfare of Defendant's employees. Article 14 stipulates that a health and welfare fund was established for the participation of Defendant's employees covered under the Agreement. (ECF 8-5). In addition, Article 14 requires the Defendant to contribute a predetermined amount of money for each hour worked by all its employees. (*Id.*).[3] This fund is called the National Automatic Sprinkler Industry Welfare Fund. (ECF No. 8-6).

The next financial obligation pertains to contributions to the National Automatic Sprinkler Industry Pension Fund. (ECF No. 8-7). Pursuant to Article 15, the parties agreed that each contractor member would contribute a predetermined amount per hour for all hours worked by all covered employees. (ECF No. 8-5).[4]

The third financial obligation of the Agreement concerns contributions to an international training fund. Article 19 provides that, to carry out the functions of the International Training Fund, a contractor member is required to contribute ten cents per hour for all hours worked by all covered employees to the national office for the fund. (ECF No. 8-5).[5] Those monies are then forwarded from the Trustee of the International Training Fund to a fund called the "United Association International Training Fund." (*Id.*).

The fourth financial obligation relates to contributions to a supplemental pension fund. Pursuant to Article 22 of the Agreement, the Defendant agreed that a supplemental pension fund,

---

[3] The Defendant was required to contribute $8.37 per hour for all hours worked. (ECF 8-5). On January 1, 2016, this amount increased to $8.62 per hour for all hours worked. (*Id.*).

[4] Starting on September 1, 2013, the Defendant was to pay $5.50 per hour for all hours worked by covered employees, however, this predetermined amount increased on January 1 of the forthcoming years, as follows: $5.75 for 2014; $5.90 for 2015; and $6.05 for 2016. (*Id.*).

[5] This fund does not provide for an increase of the hourly amount owed for subsequent years.

3

ultimately called the "Sprinkler Industry Supplemental Pension Fund," was established for all covered employees. (ECF Nos. 8-5; 8-8). Defendant acknowledged that, by executing the Agreement, it was joining in and subscribing to the "Declaration of Trust" and any future amendments governing the supplemental pension fund. (*Id*.).[6]

The terms outlining the due date for the reports and contributions to the Collective Funds are set forth within the Guidelines. (ECF Nos. 8-3; 8-10). The Defendant is to provide its reports, as well as its contributions to the Collective Funds, by no later than the "15th of the month following the month in which the work was performed" or 15 days following the end of the preceding month. (ECF No. 8-10). If the Plaintiffs did not timely receive the report and contributions, then the Defendant is advised of the delinquency, and interest of 12% per annum would be assessed on any late contributions to the Collective Funds. (*Id*.). If the contributions are more than 60 days late, liquidated damages, correlated to the number of days that a payment was delinquent, are called for. (*Id*.).[7]

## B. **Procedural Background**

On March 14, 2018, Plaintiffs filed a Complaint against the Defendant alleging a breach of the Agreement and seeking to collect unpaid contributions due to the Collective Funds, as well as liquidated damages, accrued interest, court costs, and reasonable attorney's fees. (ECF No. 1).

On April 17, 2018, Plaintiffs served the Complaint on the Defendant. (ECF No. 5). An affidavit completed by a private process server describes the date and time that Defendant's

---

[6] Effective September 1, 2013, a contractor member was responsible to pay $5.68 "per hour for all hours worked by all [covered] employees," with this amount to increase on September 1 of the succeeding years through 2017. (ECF No. 8-5). The per hour rate for each year increased, as follows: $5.93 starting on September 1, 2014; $6.25 starting on September 1, 2015; $6.75 starting on September 1, 2016; and $7.25 starting on September 1, 2017. (*Id*.).

[7] The Guidelines imposed the following liquidated damages schedule: 60 days late equaled 5% of the total contribution amount; 90 days late was an additional 5%, or 10% total; 120 days late an additional 5%, or 15% total; 150 days late an additional 5%, or 20% total. (ECF No. 8-10). In addition, a delinquent employer risked being terminated from the welfare fund.

Resident Agent, Andrew Allen, was served with the summons, Complaint, and supporting documentation. (ECF No. 5). The executed summons was returned and filed with the Court on June 13, 2018. (*Id*). The Defendant did not file an Answer or otherwise respond within the 21-day period provided for by the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), which was May 8, 2018. (ECF No. 6). On June 20, 2018, the Honorable Theodore D. Chuang ordered Plaintiffs to file and serve a Motion for Clerk's Entry of Default within seven days, or to show cause as to why such motion would be inappropriate. (ECF No. 6).

On June 27, 2018, Plaintiffs filed a "Motion for Clerk's Entry of Default." (ECF No. 7). That same day, Plaintiffs filed a "Motion for Entry of Default Judgment." (ECF No. 8). In support of their motion, Plaintiffs appended many documents: (1) the Agreement; (2) the Guidelines; (3) Restated Trust Agreements establishing each of the relevant Collective Funds; (4) a spreadsheet containing the outstanding contributions owed to the Collective Funds; (5) a declaration from the Assistant Fund Administrator of the Collective Funds, John P. Eger; and (6) a declaration and summary from Charles W. Gilligan, Esq., regarding attorney's fees and costs. (ECF Nos. 8-3; 8-6 through 8-13). On July 2, 2018, the Clerk of the Court entered default against the Defendant. (ECF No. 9).

## II. DISCUSSION

### A. **Default Judgment**

Rule 55 of the Federal Rules of Civil Procedure governs default judgments. Upon motion of a party, Rule 55(a) provides that a default judgment can be entered when a defendant fails to "plead or otherwise defend in accordance with [Rule 55]." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982).

When evaluating a motion for default judgment, a district court accepts as true the well-pleaded factual allegations in a complaint, other than those pertaining to damages. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *see also* Fed.R.Civ.P. 8(b)(6). If a party's factual allegations are unchallenged because of a defendant's unresponsiveness, a district court has the discretion to grant default judgment. *See* Fed.R.Civ.P. 55(a)–(b); *see also Disney Enters. v. Delane*, 446 F. Supp. 2d 402, 405–06 (D.Md. 2006) (holding that entry of default judgment was proper because defendant had been properly served with a complaint and did not respond, even after plaintiffs tried repeatedly to contact him); *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 422 (D.Md. 2005) (concluding that default judgment is appropriate when defendant is "unresponsive for more than a year" after denial of motion to dismiss, even though defendant was properly served with plaintiff's motions for entry of default and default judgment); *Park Corp v. Lexington Ins. Co.*, 82 F.2d 894, 896 (4th Cir. 1987) (affirming default judgment when defendant lost summons and did not respond within the proper timeframe).

More than seven months have passed since Defendant received the Complaint. The Defendant has neither filed any opposition nor otherwise defended against this case. Thus, I recommend that a default judgment be entered.

**B. Damages**

Defendant's failure to deny pursuant to Fed.R.Civ.P. 8(b)(6) is not treated as an admission related to damages. *See Monge v. Portofino Ristorante*, 751 F.Supp.2d 789, 794 (D.Md. 2010); *Ryan*, 253 F.3d at 780. Ordinarily, "'[c]laims for damages must generally be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed.'" *Trustees of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation, Inc.*, No. ELH-11-832, 2011 WL 5151067, at *4 (D.Md. Oct. 27, 2011) (quoting *U2 Home Entertainment,*

*Inc. v. Fu Shun Wang*, 482 F. Supp.2d 314, 318 (E.D.N.Y. 2007)). However, a district court may award damages without a hearing if the record supports the damages requested. *See Pentech Fin. Servs., Inc. v. Old Dominion Saw Works, Inc.*, No.6:09cv00004, 2009 WL 1872535, at *2 (W.D.Va. June 30, 2009) (concluding no evidentiary hearing on damages needed based on moving party's affidavit and printout submissions establishing amount of damages sought); *DirecTV, Inc. v. Yancey*, No. Civ.A. 404CV00011, 2005 WL 3435030, at *2 (W.D.Va. Dec. 12, 2005) (concluding that where sufficient evidence exist to support damages, "[a] hearing in open court is not required.").

*1. Contributions*

Plaintiffs maintain that the Defendant is delinquent in making its contributions for the period of December 2017 through February 2018. (ECF No. 8). I find that the applicable ERISA provisions and the Agreement required the Defendant to have made timely contributions. 29 U.S.C. § 1145 of ERISA requires that:

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

I find that each of the Plaintiffs are considered multi-employer plans. *See* 29 U.S.C. § 1002(37)(A). The record clearly demonstrates that the Defendant, through its agent/representative, Andrew Allen, is a party to the August 31, 2013 Agreement. (ECF No. 8-5). By signing the Agreement, the Defendant accepted the terms therein. I further find that the Agreement obligated the Defendant to file reports and to make contributions on its employees' behalf to the Collective Funds based upon the number of hours worked by each covered employee. (ECF No. 8-5; 8-10).

In order to recover delinquent contributions, multi-employer plans are permitted to file a civil action. *See* 29 U.S.C. § 1132. If a plaintiff prevails in its action, a district court is then

required to award: (1) the unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages; (4) reasonable attorney's fees and costs of the action; and (5) "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2). The Supreme Court explained that a plan's ability to bring forth legal action as "an effective federal remedy to collect delinquent contributions." *Laborers Health & Welfare Trust Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 541 (1988). In interpreting a collection action arising under 29 U.S.C. § 1145, the Fourth Circuit reasoned that "a multiemployer plan can enforce, as written, the contribution requirements found in the controlling documents," because this "puts multiemployer plans in a stronger position than they otherwise occupy under common law contract principles." *Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997). I find that Plaintiffs have the right to collect unpaid contributions from the Defendant.

  2. *Specific Recovery Sought*

As permitted by 29 U.S.C. § 1132(g), Plaintiffs seek: (1) $29,679.76 for delinquent contributions; (2) $5,935.05 in liquidated damages; (3) $1,442.38 in accrued interest (computed by considering unpaid contributions through July 7, 2018 and continuing until the date of payment); (4) $1,056.00 in reasonable attorney's fees; and (5) $585.00 for court costs. (ECF Nos. 1; 8).

I reviewed the Plaintiffs supporting documentation, including the Agreement, Restated Trust Agreements, the Guidelines, and the declarations to make my findings and recommendations.

a. Unpaid Contributions

Plaintiffs assert that Defendant owes contributions in the amount of $29,679.76 for the period of December 2017 to February 2018. (ECF Nos. 1; 8). I find that Plaintiffs' damages request is supported by an exhibit and sworn declaration from John P. Eger, the Assistant Administrator of the Collective Funds. (ECF Nos. 8-3; 8-12). Mr. Eger reviewed the Agreement, and, in accordance to it, calculated the total amount of contributions owed for each month to each fund by reviewing the reports submitted by the Defendant. (ECF No. 8-3). I find that the contributions owed to the Collective Funds is based on the numbers of hours worked by the Defendant's employees, which is consistent with the terms of the Agreement. I also credit Plaintiffs' spreadsheet, which provides a monthly breakdown of the contributions owed for each month between December 2017 and February 2018 for the Collective Funds. (ECF No. 8-12). The Defendant has not refuted Plaintiffs' evidence. Accordingly, I recommend an award of $29,679.76 to Plaintiffs.

b. Accrued Interest on Unpaid Contributions

Plaintiffs claim interest in the amount of $1,442.38 (previously assessed on the unpaid contributions). (ECF No. 8-12). The ability to assess interest on late contributions is found in 29 U.S.C. § 1132(g)(2), which states that "interest on unpaid contributions shall be determined by using the rate provided under the plan." The Guidelines set forth that, in the event contributions are paid late, interest will be assessed at 12% per annum. (ECF No. 8-10, Exh. H). Here, the undisputed evidence is that Defendant's unpaid contributions are delinquent. Therefore, Plaintiffs are entitled to interest assessed on the unpaid total. Thus, I recommend that the Court award Plaintiffs interest in the amount of $1,442.38.

c. <u>Liquidated Damages</u>

Plaintiffs request liquidated damages in the amount of $5,935.95. Under ERISA, a prevailing party shall be entitled to liquidated damages, provided that this amount is greater than the accrued interest on the unpaid contributions. *See* 29 U.S.C. § 1132(g)(2)(C). If liquidated damages are awarded, then such sum is limited to an amount not in "excess of 20 percent (or such higher percentage as may be permitted under Federal or State law)" of the total amount of unpaid contributions. 29 U.S.C. § 1132(g)(2)(C)(ii).

In the instant action, the record reflects that Plaintiffs are seeking $5,935.95 in liquidated damages versus $1,442.38 in accrued interest. Where, as here, the value of liquidated damages is greater than accrued interest, the court is required to award liquidated damages. However, in accordance with the statute, the court must also determine whether the sum of the liquidated damages is in excess of 20 percent.

The Guidelines provided by Plaintiffs instruct that liquidated damages can be imposed for unpaid contributions more than 60 days late and mandate a five percent incremental increase for every 30 days that the contributions are late following the initial 60-day period such that the total percentage does not exceed 20%. Here, I find that Defendant's contributions are more than 150 days delinquent, which permit Plaintiffs to impose 20% interest on the unpaid contributions. (ECF No. 8-12, Exh. J). I compared the total amount of liquidated damages assessed to the total amount of unpaid contributions. I find that the requested amount of liquidated damages is equivalent to 19.99% of the total amount of unpaid contributions; thus, it does not exceed what is permitted by statute. Because Plaintiffs support for the damages it seeks is unrefuted, the Court will grant Plaintiffs' request for liquidated damages in addition to unpaid interest on the contributions, as

permitted. Accordingly, I recommend that the Court award liquidated damages to the Plaintiffs in the amount of $5,935.95.

    d. <u>Attorney's Fees and Court Costs</u>

The statute, 29 U.S.C. § 1132(g)(2)(D), mandates that a district court award "reasonable attorney's fees and costs of the action," where, as here, the requesting party prevails. In determining an award of attorney's fees, the "lodestar" approach, which is examining "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," is the most appropriate method for the Court to utilize. *See Gisbrecht v. Barnhart*, 535 U.S. 789, 802 (2002); *Ideal Insulation, Inc.*, 2011 WL 5151067, at *6; *Int'l Painters & Allied Trades Indus. Pension Fund v. HG Professional Painting Inc.*, No. WDQ-11-172, 2011 WL 3744123, at *7 (D.Md Aug. 23, 2011); *see also Plyer v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (stating that "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.") (internal citations omitted). A plaintiff "must show that the number of hours for which he [or she] seeks reimbursement is reasonable and does not include hours that are excessive, redundant, or otherwise unnecessary." *Travis v. Prime Lending*, No. 3:07cv00065, 2008 WL 2397330, at *4 (W.D.Va. June 12, 2008). Appendix B of this district's "Local Rules, Rules and Guidelines for Determining Attorneys' Fees in Certain Cases" ("Guidelines") provides, in pertinent part, that lawyers admitted to the bar for twenty years or more may reasonably bill $300-475/hour, and that paralegals may reasonably bill $95-150/hour. Local Rules App'x B, at 3.e, f.

Here, Plaintiffs request payment of $1,056.00 in attorney's fees, and offer a sworn declaration in support from Charles W. Gilligan, Esq., a partner at O'Donoghue & O'Donoghue LLP. (ECF No. 8-13). Mr. Gilligan, who has been a member of the Bar for more than thirty years,

11

submits a time sheet. (ECF No. 8-14, Exh. L). The time sheet reflects that he billed Plaintiffs for 0.75 hours of work at an hourly rate of $310.00, for a total fee of $232.50, and that Teresa Butler, his paralegal, worked 6.75 hours at an hourly rate of $122.00 for a total fee of $823.50. (*Id.*). According to Mr. Gilligan, the hours generated relate to reviewing the case file and preparing the Complaint and default judgment motion. (*Id.*). Mr. Gilligan's hourly rate falls within the suggested range, as does that of his paralegal. *See* L.R., App'x B, at 3.e, f. In addition, I find that a total of 7.5 hours is a reasonable amount of time expended for the work performed.

Finally, Plaintiffs seek court costs of $400.00 (court filing fee) and $185.00 (out of state process service) for total costs in the amount of $585.00. (ECF Nos. 8-13; 8-15). In support of the request, Plaintiffs provide an invoice from the process server. I find that this type of cost is ordinarily charged to a client and is a reasonable out-of-pocket expense. In addition, by statute, Plaintiffs are entitled to such court costs. *See* 29 U.S.C. § 1132(g)(2)(D).

Accordingly, I recommend the Court award $1,056.00 in attorney's fees and $585.00 in court costs.

**III.    CONCLUSION**

In sum, I respectfully recommend that the Court, **GRANT** Plaintiffs' Motion for Default Judgment against Defendant Marion Fire Sprinkler & Alarm (ECF No. 8), and enter judgment in favor of the Plaintiffs in the following amounts:

(a) Unpaid contributions in the amount of $29,679.76;

(b) Interest in the amount of $1,442.38;

(c) Liquidated damages in the amount of $5,935.95;

(d) Attorneys' fees of $1,056.00; and

(e) Court costs in the amount of $585.00.


December 27, 2018                                            /s/
                                                   The Honorable Gina L. Simms
                                                   United States Magistrate Judge